# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1693

_____

United States of America

*Plaintiff - Appellee*

v.

Ricardo Macias Saucedo, also known as Ricardo Macias Saseo, also known as Rodolpho Elizaondo, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: January 17, 2020
Filed: April 15, 2020

_____

Before COLLOTON, SHEPHERD, and ERICKSON, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Ricardo Macias-Saucedo entered a conditional guilty plea to illegal reentry into the United States, in violation of 8 U.S.C. § 1326. The district court[1] sentenced him

---

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

to time served with no supervised release to follow. On appeal, Macias-Saucedo challenges the denial of his motion to dismiss the indictment. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

On January 7, 2008, Immigration and Customs Enforcement (ICE) agents encountered Macias-Saucedo, a citizen of Mexico, in a jail in Henry County, Iowa. Two days later, on January 9, 2008, Macias-Saucedo was served with a notice to appear (NTA), notice of custody determination, warrant for arrest, and notice of rights and request for disposition. Macias-Saucedo later signed a stipulated request for removal order and waiver of hearing, to which immigration authorities filed a written concurrence. After reviewing these documents and other forms filed by an ICE agent, an immigration judge (IJ) filed a decision and order finding removability by clear and convincing evidence. The IJ then ordered Macias-Saucedo removed from the United States.

On May 9, 2018, ICE agents again encountered Macias-Saucedo while executing a search warrant at Midwest Precast Concrete in Mount Pleasant, Iowa. Macias-Saucedo was questioned, and it was determined that he was unlawfully present in the United States. The agents arrested him and subsequently served a notice of intent to reinstate the prior removal order, a warning to alien ordered removed, and a warrant of removal. Macias-Saucedo was taken into ICE custody on that day.

On June 4, 2018, the government filed a criminal complaint charging Macias-Saucedo with illegal reentry into the United States. He was subsequently transferred to the custody of the United States Marshal. On June 20, 2018, a grand jury returned an indictment against Macias-Saucedo for the same offense. During this time, Macias-Saucedo remained in criminal custody.

Macias-Saucedo moved to dismiss the indictment on the grounds that his rights under the Speedy Trial Act, see 18 U.S.C. §§ 3161-3174, were violated and that the offense charged in the indictment rested on a fundamentally flawed removal proceeding. The district court denied the motion, and Macias-Saucedo later filed a motion to clarify order in which he asked the district court to hold a hearing on the collateral challenge to the underlying removal order. Following an evidentiary hearing, the district court denied the motion to dismiss and the motion to clarify order. On November 8, 2018, Macias-Saucedo entered a conditional guilty plea in which he reserved the right to appeal the denial of his motion to dismiss the indictment. He was sentenced to time served with no accompanying term of supervised release. This appeal follows.

II.

We first consider Macias-Saucedo's challenge to the indictment on Speedy Trial Act grounds. "We review the district court's findings of fact on whether a defendant's right to a speedy trial was violated for clear error but review its legal conclusions de novo." United States v. Aldaco, 477 F.3d 1008, 1016 (8th Cir. 2007).

Among other things, the Speedy Trial Act requires that an information or indictment charging an individual with a particular offense be filed within thirty days from the date on which the individual was arrested for that offense. 18 U.S.C. § 3161(b). Additionally, under Rule 5(a) of the Federal Rules of Criminal Procedure, an arresting officer must bring an arrestee before a magistrate judge or a state or local judicial officer "without unnecessary delay."

However, we have held that civil detentions, such as those that occur in deportation proceedings, do not trigger the time requirements of Rule 5(a) or the thirty-day period under the Speedy Trial Act. See United States v. Perez-Perez, 337 F.3d 990, 997 (8th Cir. 2003) ("Civil deportation proceedings do not trigger the

criminal rules of procedure, including Rule 5(a).”); <u>United States v. Grajales-Montoya</u>, 117 F.3d 356, 366-67 (8th Cir. 1997) (explaining that time spent in civil immigration detention is not counted for Speedy Trial Act purposes). In this case, Macias-Saucedo was arrested and civilly detained by immigration officials on May 9, 2018. A criminal complaint was filed in federal district court on June 4, 2018, and he was transferred to the custody of the United States Marshal for criminal proceedings at that time. Accordingly, it was on June 4, 2018 that Macias-Saucedo was first held in criminal custody, and the Speedy Trial Act's thirty-day period began to run on that date. Because an indictment was returned within the thirty-day period—on June 20, 2018—there was no violation of the Speedy Trial Act.

Macias-Saucedo, however, argues that we should acknowledge and apply the “ruse exception” to the Speedy Trial Act that has been recognized by other circuits. <u>See, e.g.</u>, <u>United States v. Pasillas-Castanon</u>, 525 F.3d 994, 997 (10th Cir. 2008) (collecting cases). Under the ruse exception, a civil arrest or detention may trigger the Speedy Trial Act “when law enforcement authorities collude with state or civil officials to detain a defendant as a mere ruse for later prosecution.” <u>Id.</u> The exception has been drawn narrowly and “is not easily triggered.” <u>Id.</u> at 998. It generally has been interpreted to apply “only when a defendant demonstrates that the *‘primary or exclusive purpose’* of a civil detention was to hold the defendant for future criminal prosecution.” <u>Id.</u> The Tenth Circuit has further explained the exception as follows:

> The mere fact that the detaining authorities are aware other potential criminal charges are available does not trigger the exception. There must be evidence showing the detention is for the primary or exclusive purpose of furthering the criminal prosecution. Without evidence of wrongful collusion for this purpose, the exception does not apply. In short, if the detaining authorities have a lawful basis for

>their civil detention, a defendant is not entitled to invoke the exception.

Id. (footnote omitted); see also United States v. Noel, 231 F.3d 833, 836 (11th Cir. 2000).  We have previously declined to reach the issue of whether this Court recognizes the ruse exception because, even assuming that the exception exists, the facts in that case did not suggest any such ruse.  See Grajales-Montoya, 117 F.3d at 366.

Once again, we decline to reach this issue.  Even assuming, without deciding, that there is a ruse exception to the Speedy Trial Act, it would not apply in this case because the facts show that no ruse occurred.  Immigration authorities undeniably had a "lawful basis for their civil detention" of Macias-Saucedo.  Pasillas-Castanon, 525 F.3d at 998.  When ICE agents encountered Macias-Saucedo on May 9, 2018 and determined that he was unlawfully present in the United States, they civilly detained him while starting proceedings to reinstate the prior order of removal.  He was ultimately held by ICE for twenty-six days.  Macias-Saucedo does not point to any evidence in the record suggesting that government officials colluded to hold him in order to give prosecutors additional time to prepare criminal charges or that ICE was not actually attempting to deport him during this time.

Macias-Saucedo asserts that he was only detained for fourteen days before being deported in 2008 and suggests that it is suspicious that he was held for twenty-six days before being transferred into criminal custody and without being deported.  However, nothing in the record demonstrates that twenty-six days is an unreasonable amount of time to be held in civil detention while awaiting deportation pursuant to the reinstatement of a prior removal order or that his detention was intentionally prolonged so the government could obtain more evidence before charging him with a criminal offense.  Contrary to his argument, it actually appears that prosecutors likely had what they needed to charge him with illegal reentry when immigration

officials confirmed his identity, that he was subject to a prior removal order, and that he unlawfully reentered. Therefore, prosecutors would not have needed to intentionally delay or prolong his civil detention in order to gather additional evidence. For these reasons, Macias-Saucedo has not shown that his detention by ICE was for the primary or exclusive purpose of furthering his ultimate prosecution.

Macias-Saucedo also challenges the district court's decision not to hold an evidentiary hearing before denying his motion. "We review the district court's decision to resolve the motion to dismiss without a hearing for the abuse of discretion." United States v. Santos-Pulido, 815 F.3d 443, 445 (8th Cir. 2016). Macias-Saucedo asserts that there were material issues of fact in dispute and that he could have presented additional evidence regarding the purpose of his civil detention. However, we are not persuaded by this argument. On appeal, Macias-Saucedo does not identify any material facts in the record, such as the dates or other factual circumstances of his detention, that are actually in dispute. Rather, he contests certain inferences that can be drawn from those facts and the district court's legal conclusion that the government was not engaged in a ruse. Further, Macias-Saucedo does not identify what evidence, if any, he would have presented to the district court had it held an evidentiary hearing. Accordingly, the district court did not abuse its discretion in declining to hold an evidentiary hearing on the motion.

## III.

Next, we consider Macias-Saucedo's challenge to the underlying removal order. Specifically, he asserts that his 2008 removal order was invalid pursuant to 8 U.S.C. § 1326(d) and, therefore, could not sustain his conviction under 8 U.S.C. § 1326(a). We review the district court's factual findings on this issue for clear error and its legal conclusions de novo. United States v. Torres-Sanchez, 68 F.3d 227, 229 (8th Cir. 1995).

"Section 1326 provides for the prosecution of an alien who, having been previously deported . . . reenters the United States without the consent of the Attorney General." Id. Although proof that the underlying deportation was lawful is not an element of the offense, a collateral challenge to the prior removal proceeding is allowed when that proceeding violated due process and deprived the defendant of his right to judicial review. Id. at 229-30 (citing United States v. Mendoza-Lopez, 481 U.S. 828, 837, 840 (1987)). In order to mount a collateral challenge to the prior order of removal, a defendant must show that: (1) he "exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d); see also United States v. Mendez-Morales, 384 F.3d 927, 929 (8th Cir. 2004). The defendant bears the burden of proof in such challenges. United States v. Martinez-Amaya, 67 F.3d 678, 680-81 (8th Cir. 1995). A defendant who knowingly and voluntarily waives his right to appeal a removal order fails to exhaust his administrative remedies and is barred from collaterally attacking that removal order in a future prosecution under 8 U.S.C. § 1326. United States v. Tamayo-Baez, 820 F.3d 308, 313 (8th Cir. 2016).

Macias-Saucedo failed to exhaust his administrative remedies and is therefore barred from collaterally attacking the underlying removal order. Based on the evidence in the record, including the 2008 NTA, the notice of rights and request for disposition, and the stipulated request for removal and waiver of hearing forms, Macias-Saucedo was apprised of his right to a hearing before an IJ; to be represented by an attorney of his choice; to examine witnesses and to present, and object to, other evidence; and to require the government to prove his removability. He was also informed of his right to apply for relief from removal and to appeal the written order of the IJ. An ICE agent affirmed that he read the relevant form to Macias-Saucedo in Spanish, offered to answer any questions that Macias-Saucedo may have, and confirmed that Macias-Saucedo could read those forms. Macias-Saucedo, however,

elected to waive these rights and to be removed from the United States. Indeed, he initialed and signed a statement, which was translated in Spanish, attesting that he understood the consequences of voluntary removal, requesting voluntary removal, and affirming that he was making this request voluntarily, knowingly, and intelligently. Further, he did not later appeal the IJ's order or file a motion to reopen, which now prevents him from collaterally attacking the underlying removal order in this case. See id. at 313-14.

Finally, we find unpersuasive Macias-Saucedo's argument that he should be excused from his failure to exhaust his administrative remedies. Specifically, he argues that he did not knowingly and voluntarily waive his rights during the 2008 proceedings. But given the foregoing facts in the record, the district court's finding that Macias-Saucedo's waiver was knowing, voluntary, and intelligent is not clearly erroneous.

IV.

For these reasons, we affirm the judgment of the district court.

_____